# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

## CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **3:22-CR-30112-RAL** |
| **Plaintiff,** | |
| **vs.** | **REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO DISMISS INDICTMENT** |
| **ETHAN BLUE BIRD,** | |
| **Defendant.** | |

Ethan Blue Bird is charged with being an unlawful drug user in possession of a firearm in violation of 18 U.S.C. § 922(g)(3). He seeks to dismiss the indictment, arguing that § 922(g)(3) is unconstitutional, both facially and as-applied to him, under the Second Amendment in light of the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n v. Bruen*.[1] Because binding precedent and historical tradition support the constitutional basis for prohibiting unlawful users of controlled substances from possessing firearms, Blue Bird's facial attack should be denied. His as-applied challenge is premature and should either be held in abeyance pending trial or denied without prejudice.

---

[1] 142 S. Ct. 2111 (2022).

## BACKGROUND

### I.     Factual Allegations

For purposes of this motion to dismiss, the Court considers the following factual allegations from the government's brief.[2] In doing so, the Court reaffirms that Blue Bird is innocent until proven guilty and takes no position on the veracity of any of the allegations.[3]

The afternoon of August 24, 2022, Rosebud Sioux Tribe Law Enforcement Services (RSTLES) responded to a call reporting that Blue Bird was waving a handgun at the Family Dollar Store in Mission, South Dakota and had just left in a gray Pontiac with taped windows.[4] RSTLES officers located Blue Bird a short time later next to the car outside his residence in the South Antelope housing community.[5] Officers detained Blue Bird and observed a pistol on the passenger seat of the vehicle.[6] They also observed a marijuana roach in the car's open trunk.[7]

Blue Bird waived his *Miranda* rights and agreed to answer questions.[8] He admitted possessing the pistol, using marijuana that day (August 24), and using both marijuana

---

[2] *See* Docket No. 40 at 1-2.
[3] *See United States v. Okello*, No. 4:22-CR-40096-KES, 2023 WL 5515828, at *1 (D.S.D. Aug. 25, 2023).
[4] Docket No. 40 at 1.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.* at 1-2.

and methamphetamine the day before (August 23). Officers arrested Blue Bird and took him to jail.[9]

There, Blue Bird provided a urine sample.[10] Testing of it confirmed that he had high levels of THC (368 ng/mL), amphetamine (3,246 ng/mL), and methamphetamine (51,687 ng/mL) in his system.[11]

## II.    Procedural History and Claims

A federal grand jury subsequently indicted Blue Bird, charging him under § 922(g)(3) with knowingly possessing a firearm while being an unlawful user of controlled substances.[12] That statute states: "It shall be unlawful for any person . . . who is an unlawful user of or addicted to any controlled substance . . . to . . . possess in or affecting commerce, any firearm or ammunition."[13]

Blue Bird moved to dismiss the indictment,[14] claiming that § 922(g)(3) is facially unconstitutional, and as-applied to him, under the Second Amendment after *Bruen*.[15] The government responded, opposing the motion on both grounds.[16]

---

[9] *Id. at 2.*
[10] *Id.*
[11] *Id.*
[12] Docket No. 1.
[13] 18 U.S.C. § 922(g)(3).
[14] Docket Nos. 36, 37.
[15] *See* 142 S. Ct. 2111.
[16] Docket No. 40.

## DISCUSSION

### I.     Legal Developments

In *District of Columbia v. Heller*,[17] the Supreme Court heard its first Second Amendment case in almost 70 years[18] and recognized that the Amendment protected an individual's right to keep and bear arms for self-defense.[19] The Court narrowed its ruling by reassuring that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill."[20] The Court then held, in *McDonald v. City of Chicago*, that the Due Process Clause of the Fourteenth Amendment incorporated this "fundamental" right against the states.[21] *McDonald* repeated the assurances from *Heller* reaffirming that the Court's opinions "did not cast doubt on such longstanding regulatory measures."[22] After *Heller* and *McDonald*, federal courts coalesced around a two-step framework that combined history with means-end scrutiny.[23] The Eighth Circuit, however, seems to have avoided directly adopting this framework when addressing constitutional challenges to firearm laws,[24] although it has

---

[17] 554 U.S. 570 (2008).
[18] *See United States v. Miller*, 307 U.S. 174 (1939) (upholding the National Firearms Act of 1934 that banned sawed-off shotguns).
[19] 554 U.S. at 595.
[20] *Id.* at 626.
[21] 561 U.S. 742, 790 (2010).
[22] *Id.* at 786.
[23] *See, e.g., Bruen*, 142 S. Ct. at 2125-26.
[24] *See United States v. Adams*, 914 F.3d 602, 607-08 (8th Cir. 2019) (Kelly, J., concurring).

applied means-end scrutiny when evaluating the constitutionality of 18 U.S.C. § 922(g)(8).[25]

More than a decade after *Heller* and *McDonald*, the Supreme Court in *Bruen* passed on the constitutionality of New York's firearm licensing regime that required persons seeking to carry a firearm outside of their home to show "proper cause."[26] In holding that the state's firearm regulation was an unconstitutional violation of the Second Amendment, the Court instructed lower courts to now determine "whether modern firearms regulations are consistent with the [ ] Amendment's text and historical understanding."[27] The Court declared that if an individual is someone whom the Amendment protects then "the government must prove that its regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."[28]

When considering the evidence presented, a court must determine whether the regulation at issue is "relevantly similar" to those at the Founding.[29] In making this determination, the court must employ "analogical reasoning" and look at "how and why the regulation burdens a law-abiding citizen's right to armed self-defense," the "central component" of the Second Amendment.[30] Such reasoning "requires only that the government identify a well-established and representative historical *analogue*, not a

---

[25] *See United States v. Bena*, 664 F.3d 1180, 1184-85 (8th Cir. 2011).

[26] *Bruen*, 142 S. Ct. at 2122–23.

[27] *Id.* at 2131.

[28] *Id.* at 2127.

[29] *Id.* at 2132 (quoting Cass R. Sunstein, *On Analogical Reasoning*, 106 Harv. L. Rev. 741, 773 (1993)).

[30] *Id.* at 2132-33 (cleaned up).

historical *twin*."[31] An assailed regulation that is not a "dead ringer for historical precursors," may still be sufficiently "analogous enough to pass constitutional muster."[32]

In a concurrence, Justice Kavanaugh, joined by Chief Justice Roberts, reiterated *Heller* and *McDonald*'s message that nothing in their holdings cast doubt on longstanding prohibitions of firearm possession.[33]

In the year that has followed *Bruen*, lower courts have grappled with Second Amendment challenges to many abiding prohibitions on the possession of firearms, including § 922(g).[34] The Eighth Circuit has yet to consider § 922(g)(3) in the wake of the *Bruen* decision. But the Fifth Circuit has, albeit in the context of an as-applied challenge.[35]

## II.    Facial Challenge

"A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications."[36] To prevail, the challenging party "must establish that no set of circumstances exists under which the Act would be valid."[37] Such challenges "run contrary to the fundamental principle of judicial restraint that courts

---

[31] *Id.* at 2133 (emphasis in original).

[32] *Id.*

[33] *Id.* at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring).

[34] *See, e.g.*, *United States v. Jackson*, 69 F.4th 495, 501 (8th Cir. 2023) (upholding constitutionality of § 922(g)(1)); *United States v. Sitladeen*, 64 F.4th 978, 987 (8th Cir. 2023) (rejecting contention that § 922(g)(5)(A) violates Second Amendment); *United States v. Rahimi*, 61 F.4th 443, 448 (5th Cir.), *cert. granted*, 143 S. Ct. 2688 (2023) (finding § 922(g)(8) unconstitutional); *United States v. Hoeft*, No. 4:21-CR-40163-KES, 2023 WL 2586030, at *7 (D.S.D. Mar. 21, 2023) (upholding constitutionality of § 922(g)(9)).

[35] *See United States v. Daniels*, 77 F.4th 337, 340 (5th Cir. 2023).

[36] *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019).

[37] *United States v. Salerno*, 481 U.S. 739, 745 (1987).

should neither anticipate a question of constitutional law . . . nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied."[38]

### A. *Seay* Still Controls

In *United States v. Seay*,[39] a pre-*Bruen* case, the Eighth Circuit rejected a facial constitutional challenge to § 922(g)(3).[40] Although the *Seay* court did not expressly engage in the kind of historical analysis *Bruen* requires, nothing in *Bruen* repudiates *Seay*'s holding.[41] "[U]ntil overruled by [the appeals] court en banc, by the Supreme Court or by Congress," *Seay* must be treated as binding precedent.[42] Other courts, faced with

---

[38] *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).

[39] 620 F.3d 919 (8th Cir. 2010).

[40] *Id.* at 925 ("we find that § 922(g)(3) is the type of 'longstanding prohibition[] on the possession of firearms' that *Heller* declared presumptively lawful").

[41] *See United States v. Robinson*, No. 4:23-CR-40013, 2023 WL 7413088, at *4 (D.S.D. Nov. 9, 2023); *United States v. Le*, No. 4:23-CR-00014-SHL-HCA, 2023 WL 3016297, at *2 (S.D. Iowa Apr. 11, 2023).

[42] *M.M. ex rel. L.R. v. Special Sch. Dist. No. 1*, 512 F.3d 455, 459 (8th Cir. 2008); *see also United States v. Coonce*, 932 F.3d 623, 641 (8th Cir. 2019) (lower court should leave to higher court the prerogative of overturning its own decisions); *Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003) (district court is bound to apply Eighth Circuit precedent).

§ 922(g)(3) challenges like Blue Bird's, agree.[43] *Seay* thus controls and prevents Blue Bird from succeeding on the facial aspect of his dismissal motion.[44]

### B. *Bruen* Standard

The facial component of Blue Bird's motion also fails under the *Heller*-endorsed standard the Supreme Court "reiterate[d]" and made "more explicit" in *Bruen*.[45] Under that standard,

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."[46]

Some federal courts have interpreted this standard as once again involving two steps.[47] The Eighth Circuit has similarly broken down Second Amendment challenges into two steps.[48] Under the Eighth Circuit's approach, a court must first ask whether

---

[43] *See, e.g., United States v. Pruden*, No. 23-CR-42-CJW-MAR, 2023 WL 6628606, at *4 (N.D. Iowa Oct. 11, 2023) (absent Eighth Circuit finding that *Bruen* overturned *Seay*, district court must treat *Seay* as binding); *United States v. King*, No. 23-03004-01-CR-S-SRB, 2023 WL 6210603, at *2 (W.D. Mo. Sept. 11, 2023) (*Bruen* did not invalidate or supersede *Seay* and, as such, *Seay* remains controlling precedent), *report and recommendation adopted*, 2023 WL 6200071 (W.D. Mo. Sept. 22, 2023); *United States v. Alston*, No. 1:23 CR 11 SNLJ (ACL), 2023 WL 5959865, at *4-5 (E.D. Mo. Aug. 26, 2023) (*Seay* must be treated as binding precedent), *report and recommendation adopted*, 2023 WL 5952050 (E.D. Mo. Sept. 13, 2023); *United States v. Walker*, No. 8:22-CR-291, 2023 WL 3932224, at *5 (D. Neb. June 9, 2023) ("Because there is no indication that *Seay* is inconsistent with Supreme Court caselaw, *Bruen* does not give [the court] license to disregard it."); *Le*, 2023 WL 3016297, at *3 (*Seay* remains binding precedent).

[44] *United States v. Grubb*, 23-CR-1014-CJW-MAR, 2023 WL 5352000, at *4 (N.D. Iowa Aug. 21, 2023); *Walker*, 2023 WL 3932224, at *5.

[45] *Bruen*, 142 S. Ct. at 2129, 2134.

[46] *Id.* at 2129–30.

[47] *See Daniels*, 77 F.4th at 341 ("To determine whether a modern firearms law is unconstitutional, we now proceed in two steps.").

[48] *See Sitladeen*, 64 F.4th at 985.

§ 922(g)(3) "governs conduct that falls within the plain text of the Second Amendment."[49]
If the answer is yes, then the court must proceed to ask whether § 922(g)(3) "fits within
America's historical tradition of firearm regulation."[50]

### 1. Amendment's Text Not Limited to Law-Abiding, Responsible Citizens

The government claims that the Second Amendment does not apply to Blue Bird
because the right to bear arms extends only to "law-abiding, responsible citizens."[51] So
Blue Bird's unlawful use of drugs, the government contends, removed him from the
textual meaning of "the people" expressed in the Amendment.[52]

The claim is at odds with two new Eighth Circuit cases.[53] In those cases, the court
of appeals assumed that felons were part "of the people" the Second Amendment
protects.[54] And for good reason. "The people" mentioned in the Constitution
"unambiguously refers to all members of the political community, not an unspecified
subset."[55] Even as a drug user, Blue Bird is a member of that community.[56] To conclude
he is not would exclude him from other places (and rights) in the Constitution where "the

---

[49] *Id.* (citing *Bruen*, 142 S. Ct. at 2126).

[50] *Id.* (citing *Bruen*, 142 S. Ct. at 2126); *see also Daniels*, 77 F.4th at 341 (applying this same two-step approach in context of § 922(g)(3) challenge).

[51] Docket No. 40 at 6-8.

[52] *Id.* at 7-8; *see also United States v. Lewis*, CRIM. ACTION 22-0227-WS, 2023 WL 4604563, at *4 n.10 (S.D. Ala. July 18, 2023) (collecting cases and recognizing that some courts have accepted versions of this argument).

[53] *United States v. Cunningham*, 70 F.4th 502, 506 (8th Cir. 2023); *Jackson*, 69 F.4th at 501-02.

[54] *Id.*; *see also Robinson*, 2023 WL 7413088, at *3 (treating defendant, for purposes of his dismissal motion, as member of "the people" to whom Second Amendment applies).

[55] *Daniels*, 77 F.4th at 342.

[56] *Id.*

people" are referenced[57]—something the Supreme Court has never suggested the framers

intended. A drug user does not automatically lose his right to keep and bear arms, but

becomes *eligible* to lose it.[58] The question is whether the government can take away the

user's right to possess a firearm, not whether he has such a right.[59]

      In any event, who exactly are "law-biding, responsible citizens"? Do they include

traffic or petty offenders? Probably not. But how about people who smoke a joint in a

state that allows recreational marijuana use? Or persons who admit to using marijuana

at an earlier (unknown) time and are not impaired?[60] Americans are apt to have different

views on these questions making the phrase difficult, if not impossible, to enforce.[61]

      The Court rejects the assertion that the Second Amendment only protects "law-

abiding, responsible citizens" and categorically excludes any drug user. Despite being an

alleged user of drugs, Blue Bird is still one of "the people."

---

[57] *See, e.g.*, U.S. Const. pmbl. ("We *the People* of the United States . . ."); *id.* at art. 1, § 2, cl. 1 (House of Representatives composed of members chosen . . . by "*the People*" of the states); *id.* at amend. I (right of "*the people*" to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures); *id.* at amend. IX (recognizing rights "retained by *the people*"); *id.* at amend. X (acknowledging powers reserved to "*the people*"); *id.* at amend. XVII (Senate composed of senators elected by "*the people*") (emphasis added).

[58] *See Kanter v. Barr*, 919 F.3d 437, 453 (7th Cir. 2019) (Barrett, J., dissenting); *see also* Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self Defense: An Analytical Framework and Research Agenda*, 56 UCLA L. Rev. 1443, 1497-98 (2009) (describing the two competing perspectives of Second Amendment analysis).

[59] *Kanter*, 919 F.3d at 453 (Barrett, J. dissenting).

[60] *See Daniels*, 77 F.4th at 340, 342 (regular marijuana user member of "the people" with presumptive right to bear arms).

[61] *Range v. Attorney Gen.*, 69 F.4th 96, 102 (3d Cir. 2023) (en banc).

Section 922(g)(3) also regulates Second Amendment conduct. The Supreme Court has held that the Amendment confers an individual right to keep and bear arms that is not limited to military service.[62] That right "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding."[63] The text of the Amendment encompasses the conduct Blue Bird is accused of and presumptively protects it.[64]

The same is true even under a more nuanced approach to *Bruen*'s first step, centering on conduct. As the Eighth Circuit noted in another § 922(g) case, "*Bruen* does not command us to consider any 'conduct' in isolation and simply assume that a regulated person is part of 'the people.' To the contrary, *Bruen* tells us to begin with a threshold question: whether the person's conduct is 'covered by' the Second Amendment's 'plain text.'"[65] Answering this question, the appeals court concluded that the text of the Amendment did not "cover *any* conduct by unlawfully present aliens" and rejected a facial constitutional challenge to § 922(g)(5).[66] The point the court appears to make is that the first step of the *Bruen* analysis is not perfunctory and must focus on conduct.[67]

---

[62] *See Heller*, 554 U.S. at 582-91.

[63] *Id.* at 582.

[64] *Bruen*, 142 S. Ct. at 2126; *Daniels*, 77 F.4th at 342.

[65] *Sitladeen*, 64 F.3d at 987.

[66] *Id.*

[67] *See Le*, 2023 WL 3016297, at *5.

11

Applying that approach here, a court cannot strike down § 922(g)(3) on facial grounds without concluding that every illegal user of controlled substances—no matter how dangerous the drugs are, how severe the addiction is, or what the level of impairment may be—is engaged in constitutionally protected conduct when that user possesses a firearm.[68] Nothing in *Bruen* or Eighth Circuit precedent supports, much less compels, such a conclusion.[69]

### 2. Section 922(g)(3) *Consistent* with Historical Tradition of Firearm Regulation

Since the Second Amendment presumptively guarantees Blue Bird—even as an unlawful drug user—with the right to possess a handgun, the government "must justify [§ 922(g)(3)] by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."[70] The government provides several analogues to support the constitutionality of the statute.[71] They generally fall into three categories: (1) the mentally ill, (2) intoxicated persons, and (3) those adjudged dangerous. Individually, or collectively, they are analogous enough to comply with constitutional strictures.[72]

---

[68] *Id.*

[69] *Id.*

[70] *Bruen*, 142 S. Ct. at 2129-30.

[71] Docket No. 40 at 8-26.

[72] *See id.*; *Bruen*, 142 S. Ct. at 2132-33 (analogues—similar harms Founders confronted and addressed with regulations—all that is required).

### a.  Mental illness analogue

The Supreme Court has repeatedly suggested that there is an appropriate historical analogue for firearm prohibitions on the "mentally ill" by characterizing them as "longstanding."[73] In *United States v. Jackson*, the Eighth Circuit carried this suggestion further, solidifying the constitutionality of regulations prohibiting mentally ill persons from possessing firearms.[74] Many courts have followed suit, upholding § 922(g)(3) based on analogues that disarmed the mentally ill.[75]

Drug addiction is arguably a form of mental illness[76] because "habitual drug abusers, like the mentally ill, are more likely to have difficulty exercising self-control, making it dangerous for them to possess [] firearms."[77] So while historical restrictions on firearm possession of the mentally ill may not be a "dead ringer" for modern-day

[73] *Heller*, 554 U.S. at 626; *see McDonald*, 561 U.S. at 786 (same); *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (same).

[74] 69 F.4th 495, 505 n.3 ("A footnote in *Heller* referred to 'presumptively lawful regulatory measures' that forbid the possession of firearms by felons and the mentally ill . . . . The Court said that it identified these measures 'only as examples,' and that the list was not exhaustive. . . . We think it more likely that the Court presumed that the regulations are constitutional *because they are constitutional*, but termed the conclusion presumptive because the specific regulations were not at issue in *Heller*.") (emphasis added) (quoting *Heller*, 554 U.S. at 627 n.26).

[75] *See, e.g.*, *Robinson*, 2023 WL 7413088, at *4; *Le*, 2023 WL 3016297, at *3-4; *United States v. Lewis*, 650 F. Supp. 3d 1235, 1241-42 (W.D. Okla. 2023); *Fried v. Garland*, 640 F.Supp. 3d 1252, 1263 (N.D. Fla. 2022); *United States v. Seiwert*, No. 20 CR 443, 2022 WL 4534605, at *2 (N.D. Ill. Sept. 28, 2022); *see also United States v. Randall*, No. 4:22-CR-00099-SMR-HCA-3, 2023 WL 3171609, at *3 (S.D. Iowa Feb. 14, 2023) ("The laws within the United States have long excluded individuals with mental illness from gun ownership.").

[76] *See, e.g.*, *United States v. Mosley*, 277 F. Supp. 3d 1294, 1298 (M.D. Ala. 2017) ("As the National Institute on Drug Abuse explains, drug abuse is a mental illness 'because addiction changes the brain in fundamental ways, disturbing a person's normal hierarchy of needs and desires and substituting new priorities connected with procuring and using the drug.'"); *see also Daniels*, 77 F.4th at 349 ("assum[ing] that intoxication with mari[j]uana is analogous to short-term mental illness"); *Le*, 2023 WL 3016297, at *3 (comparing drug addiction and mental illness).

[77] *United States v. Yancey*, 621 F.3d 681, 685 (7th Cir. 2010).

restrictions on drug users—especially users with disabling amounts of drugs in their system—the two are sufficiently alike ("relevantly similar" with a conceptual fit)[78] to withstand constitutional scrutiny.[79]

At any rate, it is reasonable to assume that drug "intoxication" is analogous to at least short-term mental illness.[80] Benjamin Rush—a Declaration of Independence signatory—once remarked that a "temporary fit of madness" was a symptom of drunkenness.[81] And in a legal treatise, Thomas Cooley described drunkenness as a form of "temporary insanity."[82] The same can be said of someone high on marijuana and methamphetamine.

### b. Intoxication analogue

Section 922(g)(3) is also analogous to historic laws that prohibited the intoxicated from possessing a firearm. And courts have so held.[83] "Because there was little regulation

---

[78] *Bruen*, 142 S. Ct. at 2131-32.

[79] *Le*, 2023 WL 3016297, at *3.

[80] *Daniels*, 77 F.4th at 349.

[81] Benjamin Rush, *An Inquiry into the Effects of Ardent Spirits upon the Human Body and Mind* 6 (8th ed., Boston, James Loring 1823).

[82] Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 660 n.1 (2d ed., Boston, Little Brown & Co. 1871).

[83] *See, e.g.*, *Robinson*, 2023 WL 7413088, at *4; *Okello*, 2023 WL 5515828, at *3-5 ("historic laws [which the court provided an overview of] prohibiting possession of firearms by the intoxicated are sufficient to justify § 922(g)(3)"); *United States v. Espinoza-Melger*, No. 2:21-CR-204-DAK, 2023 WL 5279654, at 6, 8 & n.7 (D. Utah Aug. 16, 2023) (historical support for § 922(g)(3) in form of early American intoxication laws; Founders "recognized that guns and alcohol were a bad combination"); *Randall*, 2023 WL 3171609, at *3 (historical analogue, in form of laws prohibiting possession of firearms by alcoholics, sufficient to justify § 922(g)(3) under *Bruen*); *United States v. Posey*, No. 2:22-CR-83-JD, 2023 WL 1869095, at *8 (N.D. Ind. Feb. 9, 2023) (early American intoxication laws "sufficiently analogous" for § 922(g)(3)); *Fried*, 640 F. Supp. 3d at 1262 (manner in which § 922(g)(3) burdens Second Amendment rights comparable to how historical intoxication laws burdened those rights; while impaired, intoxicated person could not carry or use firearms; same true with

of drugs (related to guns or otherwise) until the late-19th century, intoxication via alcohol is the next-closest comparator."[84]

Indeed, at the time of the founding, and before, states prohibited carrying a firearm while intoxicated.[85] Restricting firearm use for the intoxicated continued, and increased, after 1868, when the Fourteenth Amendment was ratified and it extended the Second Amendment to the states.[86] Around the turn of the century, non-alcoholic intoxicants became more prevalent and so did regulation of them.[87] In the 1930s, a cluster of jurisdictions, including South Dakota, barred selling firearms to drug addicts.[88] Roughly half of the jurisdictions around the country now restrict habitual drug users and alcoholics from possessing or carrying firearms.[89] This unbroken chain of regulation, provides the necessary historical underpinning for § 922(g)(3).

### c. Dangerous person analogue

There is an undeniable historical tradition as well, dating back to the founding era, of disarming persons perceived to be dangerous.[90] That history shows that legislatures

---

active drug user); *see also* Docket No. 40 at 11-15 (citing historical laws and authorities prohibiting intoxicating persons from possessing or carrying firearms).

[84] *Daniels*, 77 F.4th at 344–45 (citations omitted).

[85] *Okello*, 2023 WL 5515828, at *4; Docket No. 40 at 11-12.

[86] *Okello*, 2023 WL 5515828, at *4; Docket No. 40 at 12.

[87] *Okello*, 2023 WL 5515828, at *4; Docket No. 40 at 13.

[88] *Okello*, 2023 WL 5515828, at *5; Docket No. 40 at 13-14.

[89] *Okello*, 2023 WL 5515828, at *5; Docket No. 40 at 14.

[90] *See Folajtar v. Att'y Gen. of U.S.*, 980 F.3d 897, 913–15 (3d Cir. 2020) (Bibas, J., dissenting); *see generally* Joseph G.S. Greenlee, *Disarming the Dangerous: The American Tradition of Firearm Prohibitions*, 16 Drexel L. Rev. (forthcoming 2023), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4317000 (collecting historical regulations).

can and did prohibit dangerous people from possessing guns.[91] The *Jackson* court observed that "[l]egislatures historically prohibited possession by categories of persons based on a conclusion that the *category* as a whole presented an unacceptable risk of *danger* if armed."[92] Even the dissent in *Jackson's* denial of rehearing en banc—although on narrower grounds—agreed that criminal conduct, accompanied by dangerousness, was reason enough to ban someone from having a gun.[93] "[I]n passing § 922(g)(3), Congress expressed its intention to 'keep firearms out of the possession of drug abusers, a *dangerous class* of individuals.'"[94]

Section 922(g)(3) easily fits among the litany of analogue laws, in America's history, that disarmed those who intoxicate themselves with inebriating (and illegal) substances. Congress enacted the statute for the same reasons as those laws: because unlawful drug users—like the mentally ill, intoxicated, and other dangerous persons— pose a grave risk to public peace and safety.[95] Banning stoned criminals from possessing firearms is all about preventing danger, destruction, and tragedy—something deeply embedded in our country's historical fabric.

---

[91] *Kanter*, 919 F.3d at 451 (Barrett, J., dissenting).

[92] 69 F.4th at 504 (emphasis added).

[93] *See United States v. Jackson*, No: 22-2870, 2023 WL 5605618, at *2-5, 7 (8th Cir. Aug. 30, 2023) (Stras, J., dissenting from denial of rehr'g en banc) (analyzing historical laws and determining that dangerousness is historical analogue supporting § 922(g)(1) because "[d]isarmament is about dangerousness"); *id.* at 9 (Stras, J., dissenting) (arguing that there should be as-applied challenges under § 922(g)(1) that would be analyzed based on "whether the defendant is dangerous.").

[94] *Seay*, 620 F.3d at 925 (emphasis added) (quoting *United States v. Cheeseman*, 600 F.3d 270, 280 (3d Cir. 2010)).

[95] *See Robinson*, 2023 WL 74130388, at *4.

### d.  How and why burdens

*Bruen* identified "two metrics" that should be considered in the analogical inquiry—"how and why" the regulation burdens a citizen's right to armed self-defense.[96] Section 922 (g)(3) does not burden this right because the statute requires proof that the defendant violated the law by using a controlled substance.[97] And "an unlawful drug user . . . could regain his right to possess a firearm simply by ending his drug abuse."[98] The statute's burden, therefore, is "comparable" to, if not less severe than, the historical laws already discussed.

"Why" such laws were enacted has already been explained. The underlying reason for them, and for § 922(g)(3), is the same: "to keep firearms out of the hands of presumptively risky people."[99] Doing so, is a justifiable burden on Second Amendment rights.

---

[96] *Bruen*, 142 S. Ct. at 2133.

[97] *See United States v. Carnes*, 22 F.4th 743, 748 (8th Cir. 2022) (discussing temporal nexus between gun possession and unlawful drug use).

[98] *Yancey*, 621 F.3d at 686.

[99] *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 113 n.7 (1983); *see also United States v. Bass*, 404 U.S. 336, 345 (1971) (evils of statute would be thoroughly mitigated by forbidding possession of any firearm by specified classes of risky people); *United States v. Costianes*, No. JKB-21-0458, 2023 WL 3550972, at *5 (D. Md. May 18, 2023) (historical restrictions protect public safety by keeping guns out hands of presumptively dangerous persons such as those with impaired judgment or mental ability).

### e. Cases addressing facial challenges

Although the Eighth Circuit has not yet applied *Bruen* to § 922(g)(3), other courts have and they have overwhelmingly rejected facial constitutional challenges to the statute.[100] A few courts have ruled that the statute violates the Second Amendment.[101] These outliers, two of which are distinguishable as-applied cases,[102] are non-binding and their reasoning and treatment of historical analogues is too narrow and not persuasive.[103]

Section 922 (g)(3) is facially constitutional. The *Seay* decision, "well-established and representative analogue[s],"[104] and a multitude of interpretive court decisions direct that the statute be upheld.

## III.    As-Applied Challenge

"An as-applied challenge asks the reviewing court to declare the disputed statute unconstitutional 'on the facts of the particular case.'"[105] The challenger "does not contend that [the statute] is unconstitutional as written but that its application to a particular

---

[100] *See, e.g., Pruden*, 2023 WL 6628606, at *1-5; *Okello*, 2023 WL 5515828, at *5; *United States v. Springer*, No. 23-CR-1013-CJW-MAR, 2023 WL 4981583, at *2-5 (N.D. Iowa Aug. 3, 2023); *Walker*, 2023 WL 3932224, at *3-5; *Randall*, 2023 WL 3171609, *2-3; *United States v. Black*, 649 F. Supp. 3d 246, 252-53 (D.La. 2023); *Lewis*, 2023 WL 4604563, at *17; *Posey*, 2023 WL 1869095, at *5-10; *Le*, 2023 WL 3016297, at *5; *see also Espinoza-Melgar*, 2023 WL 5279654, at *9 (citing cases).

[101] *See, e.g., Daniels*, 77 F.4th at 340, 355; *United States v. Connelly*, No. EP-22-CR-229(2)-KC, 2023 WL 2806324, at *12 (W.D. Tex. Apr. 6, 2023); *United States v. Harrison*, No. CR-22-00328-PRW, 2023 WL 1771138, at *24-25 (W.D. Okla. Feb. 3, 2023).

[102] *See Daniels*, 77 F.4th at 340, 347, 355; *Harrison*, 2023 WL 1771138, at *18.

[103] *See Grubb*, 2023 WL 5352000, at *5; *see also United States v. Bulltail*, No. CR-22-86-BLG-SPW, 2023 WL 5458780, at *2 (D. Mont. Aug. 24, 2023) (*Daniels, Range*, and *Rahimi* not persuasive because their holdings narrowly tailored to their facts).

[104] *Bruen*, 142 S. Ct. at 2133 (emphasis in original).

[105] *Adams*, 914 F.3d at 605 (quoting *Sanjour v. EPA*, 56 F.3d 85, 92 n.10 (D.C. Cir. 1995)).

person under particular circumstances deprived that person of a constitutional right."[106] Proof that the Constitution (here the Second Amendment ) protects the challenger's own conduct is required.[107]

### A. Dismissal Motion Premature

Blue Bird's as-applied challenge is premature at this point. The federal criminal rules permit a party to "raise by pretrial motion any defense, objection, or request the court can determine without a trial on the merits."[108] Only if a "trial of the facts surrounding the alleged offense would be of no assistance in determining the validity of [a] motion," may a court properly rule on the motion before trial.[109] A "trial on the merits" is needed to decide the as-applied portion of Blue Bird's dismissal motion.

Deciding the motion now would require making factual findings on issues that are "inevitably bound up" with evidence about the offense itself.[110] Indeed, the district court could not rule on Blue Bird's as-applied constitutional challenge without resolving factual issues related to his prohibited person charge, such as the extent and timing of his drug use.[111] These issues are ones that fall within the province of the jury and are for it to decide.[112]

---

[106] *Id.* (quoting *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010)).

[107] *Id.*

[108] Fed. R. Crim. P. 12(b)(1).

[109] *United States v. Gillian*, 934 F.3d 854, 858 n.3 (8th Cir. 2019) (quoting *United States v. Turner*, 842 F.3d 602,604 (8th Cir. 2016)).

[110] *Turner*, 842 F.3d at 605.

[111] *Id.*; *King*, 2023 WL 6210603, at *2.

[112] *Id.*

### B. Motion Should be Held in Abeyance or Dismissed without Prejudice

Blue Bird must await the presentation of evidence at trial before seeking dismissal of the indictment on an as-applied basis. Once the trial evidence is in, he may renew his motion. Until then, his as-applied challenge to § 922(g)(3) should be held in abeyance or denied without prejudice.[113]

### C. *Daniels* is Distinguishable

Blue Bird's alleged situation differs from the successful as-applied attack mounted in *United States v. Daniels*,[114] the only court of appeals decision so far that has passed on the constitutionality of § 922(g)(3). There, a jury found the defendant guilty of the § 922(g)(3) offense and he appealed his conviction, reasserting the Second Amendment challenge that he raised before trial.[115] His challenge, unlike Blue Bird's, was therefore ripe for adjudication. And in *Daniels*, there was no evidence that the defendant was intoxicated when he was arrested and had the pistol and rifle with him.[116] By contrast, Blue Bird's urinalysis results purportedly show that he was high during the "pistol-waving" incident at the Family Dollar Store.[117] So an alleged temporal nexus existed

---

[113] *Robinson*, 2023 WL 7413088, at *5-6 (as-applied challenge held in abeyance pending determination of relevant facts); *United States v. Lewis*, No. 3:22-CR-00381, 2023 WL 6225329, at *6 (M.D. Tenn. Sept. 25, 2023) (denying dismissal motion without prejudice to defendant raising as-applied challenge at trial); *Grubb*, 2023 WL 5352000, at *5-6 (holding motion in abeyance); *Walker*, 2023 WL 3932224, at *5 & n.4 (same); *see also Hoeft*, 2023 WL 2586030, at *7 (factual questions relating to § 922(g)(9) offense make ruling on motion to dismiss premature and must await trial).

[114] *See* 77 F.4th at 340-41.

[115] *See id.*

[116] *See id.* at 339-340.

[117] Docket No. 40 at 2.

between Blue Bird's intoxication and his gun possession. But no such nexus existed in *Daniels*. What's more, Blue Bird's supposed excessive drug use, while flaunting a gun in a retail store, "predispose[d] him to armed conflict"—something *Daniels* did not have.[118] Finally, the *Daniels* court emphasized the "narrowness of its holding"—it "invalidate[d] the statute . . . only as applied to [the defendant]."[119]

## CONCLUSION

Section 922(g)(3) is facially constitutional under Supreme Court and Eighth Circuit standards. Although the Second Amendment's plain text presumptively protects Blue Bird, the historical traditions of this country permit Congress to prohibit his ability to possess a firearm because he is an averred user of illegal drugs (who, like those who are mentally ill, intoxicated, and dangerous, have been regulated since colonial days). He may thus be prosecuted and held to answer at trial for the prohibited person (unlawful drug user) offense he is charged with.

Blue Bird's as-applied challenge to § 922(g)(3) is premature. But even if it is not, the challenge still fails because he is alleged to have been actively intoxicated while brandishing a pistol in a public place and, as a result, a dangerous person.

---

[118] *Daniels*, 77 F.4th at 354.
[119] *Id.* at 355.

## RECOMMENDATION

In accordance with the authorities and legal analysis set forth in this report, and the record now before the Court, it is

RECOMMENDED that Blue Bird's motion to dismiss the indictment[120] be denied in part and held in abeyance in part. The motion should be denied to the extent that it seeks to have § 922(g)(3) declared facially unconstitutional. The motion's as-applied challenge to the statute though should be held in abeyance, or in the alternative, denied without prejudice, until all the trial evidence is in.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to object to the same.[121] Unless an extension of time for cause is later obtained,[122] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[123] Objections must "identify[] those issues on which further review is desired[.]"[124]

DATED this 14th day of November 2023.

**BY THE COURT:**

_Mark A. Moreno_

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

---

[120] Docket Nos. 36-37.

[121] *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b).

[122] *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (citing *Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[123] *See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[124] *Arn*, 474 U.S. at 155.